Lincoln D. Bandlow, Esq. (CA #170449)
lincoln@BandlowLaw.com
**Law Offices of Lincoln Bandlow, P.C.**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Phone: (310) 556-9680
Fax: (310) 861-5550

Attorney for Plaintiff
Strike 3 Holdings, LLC

J. Curtis Edmondson, CASB # 236105
Law Offices of J. Curtis Edmondson
15490 NW Oak Hills Dr
Beaverton, OR 97006
Phone: (503) 336-3749
Email: jcedmondson@edmolaw.com

Douglas J. Rosner
Law Offices Douglas Joseph Rosner
2625 Townsgate Road, Suite 330
Westlake Village, CA 91361
Phone: (818) 501-8400
Fax: (818) 880-4485
Email: doug@drosnerlaw.com

Attorneys for Defendant
John Doe

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Case Number: 2:20-cv-08646-TJH-SP |
| Plaintiff, | **DISCOVERY MATTER** |
| vs. | **JOINT STIPULATION UNDER L.R. 37-2 REGARDING STRIKE 3 HOLDINGS, LLC'S MOTION TO COMPEL RESPONSES TO ITS REQUEST FOR PRODUCTION NOS. 1 AND 15 AGAINST JOHN DOE** |
| JOHN DOE subscriber assigned IP address 47.144.166.78, | |
| Defendant. | Magistrate: Hon. Sheri Pym |
| | Date: November 30, 2021<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 3, 3rd Floor |
| | Discovery Cutoff: N/A<br>Pretrial Conference: August 9, 2021<br>Trial Date: N/A |

# TABLE OF CONTENTS

I.   INTRODUCTORY STATEMENTS ..................................................1

A. Plaintiff's Introductory Statement ......................................1

B. Doe's Introductory Statement............................................3

II.  REQUEST FOR PRODUCTION NO. 1....................................5

A. Plaintiff's Contentions and Points of Authority .........................6

   i.   The Mirror Images of Doe's Hard Drives are Relevant ..........................7

   ii.  Production of the Mirror Images of Doe's Hard Drives is Proportional to the Needs of this Case ..................................9

   iii. Doe's Objections are Without Merit ......................................13

   iv.  Doe's "Search Term" Proposal Is Not Appropriate For This Case........16

B. Doe's Contentions and Points of Authority................................20

III. REQUEST FOR PRODUCTION NO. 15................................25

A. Plaintiff's Contentions and Points of Authority .........................26

B. Doe's Contentions and Points of Authority................................27

IV.  CONCLUSION ........................................................28

A. Plaintiff's Conclusion ................................................28

B. Doe's Conclusion........................................................28

i

Pursuant to Fed. R. Civ. P. 37 and L.R. 37-2, Plaintiff Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3") and Defendant John Doe subscriber assigned IP address 47.144.166.78 ("Defendant," "John Doe," or "Doe"),[1] respectfully submit the following Joint Stipulation Regarding Strike 3 Holding, LLC's Motion to Compel Responses to Its Requests for Production Nos. 1 and 15 Against John Doe. The parties have met and conferred on this discovery dispute in good faith but were unable to come to a mutually agreeable resolution. *See* L.R. 37-1. The parties respectfully seek the Court's assistance in resolving this dispute.

## I.      INTRODUCTORY STATEMENTS

### A.      Plaintiff's Introductory Statement

This is an Internet piracy case. Plaintiff alleges that Doe downloaded and distributed Plaintiff's copyrighted works using the BitTorrent protocol. During discovery, Plaintiff requested "mirror" images of Doe's hard drives and his cloud-based storage systems ("cloud accounts") so that both parties' experts could examine them. Doe admitted that he created mirror images of his hard drives, but Doe refuses to produce those images or permit imaging of his cloud accounts. Despite good faith conferrals, the parties have reached an impasse on this issue.

In this case, Doe's hard drives are not merely computer systems storing emails relevant to a garden-variety contract dispute. Instead, this is a case about the unlawful copying and distribution of copyrighted works conducted over the Internet and Doe's hard drives are the instrumentalities that Doe used to commit that digital piracy. They are relevant both to Plaintiff's infringement claim and to Doe's affirmative defenses. Moreover, production of this discovery is proportional to the needs of the case, particularly since Doe has *already* created mirror images

---

[1] Although Plaintiff is aware of Doe's name, the parties have agreed to refer to Defendant as "John Doe" in public filings.

1

of the hard drives, and the imaging of the cloud accounts entails no more burden than providing temporary password(s) to Plaintiff's expert.

Doe does not substantively deny that this discovery is relevant. Instead, he argues that producing the hard drive images is not proportional to the needs of this case because the devices *might* contain private and/or privileged materials, such as communications and family photographs. However, these objections are based on inapplicable state law and/or lack the specificity required by Rule 26(b)(5). Nor have the parties' good faith conferrals aided significantly in identifying Doe's allegedly privileged, but unidentified, documents (that may or may not exist).

Rather than permit Plaintiff's experts to have the same access to the hard drives as Doe's experts (under a protective order preventing disclosure of privileged materials), Doe proposes an extremely restrictive approach: that Doe run "search terms" and "search strings" on the imaged hard drives and cloud accounts. However, limiting Plaintiff's access to the results of Doe's search terms simply will not uncover the evidence crucial to proving or disproving the parties' claims and defenses. Moreover, even if search terms *could* capture this evidence—which they cannot—using this outdated and ill-suited method of e-discovery would require the parties to agree on possibly thousands of search terms in an absurdly tedious technological version of "Guess-Who?"

In short, Doe's hard drives and cloud accounts are relevant to this dispute, their production is proportional to the needs of this case, Doe's privacy concerns can be adequately addressed while still affording Plaintiff's expert the same access as Doe's experts, and, most importantly, their production may well bring this dispute to a quick and efficient end. Accordingly, Plaintiff respectfully requests that the Court enter an Order compelling Doe to produce the images of the hard drives and cloud accounts, subject to Plaintiff's ESI protocol, which includes measures to protect Doe's privacy.

2

**B.     Doe's Introductory Statement**

A person's personal computer is now the modern-day repository of confidential and private information: communications with lawyers, financial documents downloaded from banks, emails with family members, and children's photographs, and private medical records.  The most intimate details of a person's life is now encapsulated in a terabyte below a Mac screen and stored on services like Dropbox, Google Drive, iCloud, etc..

When an opposing party images a person's personal hard drive or requests the "password information" to a cloud storage system, they have access to all of this personal information.  There is no way to "unring the bell".  They can use this information to gain an upper hand in settlement, by looking at a bank statement on the computer.  Or they can find out if the person is suffering from an illness which would make them not want go to trial.

Rule 26's rule on proportionality is the gate keeper to prevent discovery overreach and abuse.  Almost every court has adopted the use of ESI search strings in civil disputes.  The few disputes involving drive imaging are trade secret cases where the Plaintiff has *apriori* knowledge that the computer was used steal information (for example a company issued computer or the information is gathered from a known user id/password).  Here the only allegation is that John Doe is the subscriber to the IP address, an allegation that does not survive *Twombly. Cobbler Nevada vs. Gonzales (*2018) 901 F.3d 1142.

Strike 3 complains that "search strings" cannot locate movies files.  This is wrong.  It is possible to compose binary "search strings" with the same data that Strike 3 acquired using VXN ( the   PCAP files  which is 16KB in length) to determine if a particular movie exists.  Or Strike 3 can search for data within a ",torrent" file on the laptop by using text data.  (See https://en.wikipedia.org/wiki/Torrent_file).

Strike 3 downplays access to privileged and confidential information. The attorney-client privilege is one of the most important privileges *Bittaker v. Woodford,* (9th Cir. 2003) 331 F.3d 715, 721.

Strike 3's request is a *redux* of a 2019 discovery motion that repeats a request to image a hard drive in the Western District of Washington where that court ruled that "Search Strings" was an appropriate discovery tool. *Strike 3 Holdings vs. John Doe* (WAWD 2018) 17-cv-01731 ("Seattle Case"). Edmondson Decl, Ex. 1. In the Seattle Case, Strike 3 alleged a retired police officer downloaded plaintiff's movies. Like here, in the Seattle Case the defendant denied the claims from the beginning. Strike 3 then moved to seize and inspect the hard drives[2]. The Court in the Seattle Case denied the request but allowed them to use "Search Strings". String 3's own expert proposed a workable "search string' protocol using a tool called "AXIOM".

The facts in this case do not support that Doe Subscriber is the infringer. Doe's WiFi system was easily accessible to dozens of individuals, mostly Doe's neighbors. Strike 3 has failed to provide any third party evidence to link Doe to the alleged infringements. The only connection, so far, is that Doe has a casual interest in photography. But everyone today with an iPhone likely has a casual interest in photography. Strike 3 is engaged in a fishing expedition of Doe's personal data on his hard drive.

This is not to say that John Doe has been unresponsive to discovery. John Doe responded to all discovery. <u>In responding to discovery</u> counsel retained a support person to use a forensics tool to facilitate the searching of the drive. When Strike 3 asked for information, counsel inspected the drive at issue and responded to all discovery. John Doe has fully complied with all discovery requests and has

---

[2] Strike 3 also tried to inspect the hard drives of a family member, which was denied.

4

turned over all documents relevant to this case.  If Strike 3 claims spoliation, it can take a deposition.

Here, Strike 3's request to image the drive is therefore overbroad and intrusive and will expose John Doe's privileged information, personal and private documents between husband and wife and other private financial information.  The result is that Doe will either have to expose their confidential information or spend considerable sums to try to inspect and  "redact" information from gigabytes of data.

Doe is willing to work with Strike 3's to develop a reasonable ESI protocol with search strings.  Strike 3's request for unfettered examination of Doe's hard drive should be denied.

## II.   REQUEST FOR PRODUCTION NO. 1

Plaintiff's RFP No. 1 requests: *A forensically sound copy (i.e., a mirror image/clone) of the hard drive for each of the COMPUTER DEVICES USED in YOUR ADDRESS within the PERIOD OF RECORDED INFRINGEMENT.*[3]

Doe's objection to RFP No. 1:  *The term "forensically sound" is vague and ambiguous. The request is improper in that requires an act to be performed by the*

---

[3] The term "COMPUTER DEVICES" is defined as "any computer device, including any computer laptop or desktop, mobile phone, iPad or other tablet device, external hard drive, portable hard drive, server, NAS (Network-Attached Storage), USB (thumb) drive, internal hard drives which may have been removed from their original device, solid state hard drives, or any other electronic device capable of connecting to the internet, downloading media files, or storing electronic data, within your possession and control." The term "USED" is defined as "when discussing an electronic device, means connected the device to a computer or other device, connected the device to a power source, stored files on the device, copied files to the device, copied files from the device, erased files from the device, accessed files on the device, viewed files on the device, or engaged in any combination of the foregoing." The terms "YOU" and "YOUR" are defined as "Defendant in this case and his representatives, agents, as well as all other persons acting on his behalf." The term "ADDRESS" is defined to mean certain "real property located at" a stated address, which is not repeated here based on the agreement of the parties to refrain from identifying Doe's name and address in public filings.

5

*Defendant (make a forensic copy). Performing an operative act on a hard drive is neither required under the local rules nor is Defendant required to bear the cost. Further supplying an entire hard drive, whether "forensically sound" or original allows to Plaintiff access to documents on the hard drive that are: irrelevant, protected by California's Constitutional Right to Privacy Cal Const Art 1, ¶1; protected by the Attorney Client privilege, protected by the Spousal privilege, and irrelevant to the dispute at hand.*

Doe's response to RFP No. 1:  *Defendant will search the hard drive for specific documents using "search terms" or "search strings" and return requested documents.*

### A.  Plaintiff's Contentions and Points of Authority

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Rule 34(a)(1)(A) expressly allows for a request "to produce or permit the requesting party or its representative to inspect, copy, test, or sample . . . any documents or electronically stored information . . . stored in any medium from which information can be obtained either directing or, if necessary, after translation by the responding party into a reasonably usable format[.]"

"The party seeking to compel discovery 'has the initial burden of demonstrating relevance' under Rule 26." *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 17-2522, 2020 WL 2891898, at *3 (C.D. Cal. Feb. 20, 2020) (citation omitted). Thereafter, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Duran*

6

*v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citation omitted). "Relevancy in civil litigation is a relatively low bar." *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020). In contrast, "[t]he party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." *Monster Energy Co. v. Vital Pharms., Inc.*, No. 18-1882, 2021 WL 1234723, at *3 (C.D. Cal. Feb. 22, 2021) (citations omitted). "Broad discretion is vested in the trial court to permit or deny discovery," and, in the event the court denies discovery, that decision "will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (cleaned up).

### i.    The Mirror Images of Doe's Hard Drives are Relevant

"A 'relevant matter' under Rule 26(b)(1) is any matter that 'bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *James v. US Bancorp*, No. 18-1762, 2021 WL 1890787, at *1 (C.D. Cal. May 11, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "As the instrumentalities of the alleged copyright infringement, copies of Defendant's hard drives are clearly relevant." *Strike 3 Holdings, LLC v. Bordley*, No. 18-868, 2019 WL 9098120, at *1 n.1 (E.D. Pa. Feb. 26, 2019) (granting motion to compel production of hard drives). This is not a case where electronically-stored information ("ESI") is a mere byproduct of the dispute—Doe's hard drives are at "**the heart of this case**." *Id.* (emphasis added). "[W]here the computer itself is at the heart of the litigation—where it is, in effect, an instrumentality of the alleged copyright infringement—it is plainly relevant under Fed. R. Civ. P. 26(b)." *Capitol Records, Inc. v. Alaujan*, No. 03-11661, 2009 WL 1292977, at *1 (D. Mass. May 6, 2009). "[I]nspection of a computer's

7

contents is frequently permitted in cases involving copyright infringement."
*Dassault Systemes, S.A. v. Childress*, No. 09-10534, 2012 WL 993959, at *2 (E.D. Mich., 2012); *Hedenburg v. Aramark Am. Food Servs.*, No. 06-5267, 2007 WL 162716, at *2 (W.D. Wash. Jan. 17, 2007) ("[A] thorough search of an adversary's computer is sometimes permitted where the contents of the computer go to the heart of the case.").

> The essence of [the plaintiff's] claim is that [the defendant] copied its copyrighted works using the BitTorrent protocol. There is no question that the information stored on his hard drive is necessary to confirm any copyright infringement or to demonstrate that he has not infringed. Evidence of BitTorrent use is demonstrated through the use of computer hardware capable of connecting to the Internet and storing potentially infringing copies of the films.

*Malibu Media, LLC v. Ricupero*, No. 14-821, 2015 WL 4273463, at *9 (S.D. Ohio July 14, 2015) (compelling production of hard drives).

Doe's hard drives are not only relevant to Plaintiff's claim, but also to Doe's defenses. Fed. R. Civ. P. 26(b)(1). Doe has asserted affirmative defenses that presuppose that Doe did, in fact, make use of Plaintiff's works: fair use, first sale, and even DMCA safe harbor immunity. *See* D.E. 11 at p. 6 (invoking 17 U.S.C. §§ 107–122, 512); *Rogers v. Giurbino*, 288 F.R.D. 469, 479 (S.D. Cal. 2012) (finding affirmative defenses expanded scope of discovery). While nothing prevents Doe from asserting inconsistent defenses, Fed. R. Civ. P. 8(d)(3), the fact is that these defenses are only intelligible if Doe *did* copy and distribute Plaintiff's works. Indeed, these wide-ranging defenses underscore the relevancy of the hard drives as the instrumentality of Doe's use (as the defenses imply) or nonuse (as the denial implies) of Plaintiff's copyrighted works. *See Atl. Recording Corp. v. Howell*, No. 06-2076, 2008 WL 4080008, at *2 (D. Ariz. Aug. 29, 2008) (explaining that without the opportunity to examine a un-spoliated hard drive, "the court [is] unable to examine the factual accuracy of [Defendant's] defenses" and that it is "impossible to decide this case on the merits"); *Arista Records, LLC v.*

8

*Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006) ("Defendant has strenuously denied throughout this lawsuit that she violated plaintiffs' copyrights. The best proof of whether she did so would be to examine her computer's hard drive which would show, among other things, the existence of any P2P file-sharing programs and the presence of plaintiffs' copyrighted sound recordings.").

### ii. Production of the Mirror Images of Doe's Hard Drives is Proportional to the Needs of this Case

In addition to being relevant, discovery of Doe's hard drives is proportional to the needs of this case. Each of the proportionality factors in Rule 26(b)(1)—"the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"—weighs in favor of compelling production of the mirror images of Doe's hard drives.

First, "Strike 3's claim implicates important property rights protected by the Copyright Act." *Strike 3 Holdings, LLC v. Doe*, No. 21-837, 2021 WL 3128872, at *4 (D.D.C. July 23, 2021). Indeed, the benefits of protecting copyrighted works from infringement do not just inure to the copyright owner, but the public as well. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).

Second, the amount in controversy in this matter is large—and growing. If Plaintiff prevails, at a minimum it will be entitled to $51,000 in statutory damages for the sixty-eight works at issue. *See* 17 U.S.C. § 504(c)(1); *Strike 3*, 2021 WL 3128872 at *4. Moreover, it is well-within the Court's discretion to substantially increase this award, especially in the event the Court finds Doe's infringement is "willful." 17 U.S.C. § 504(c)(2); D.E. 1 at ¶ 54; *see Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) ("This is not a case of the infringer

9

creating something new and incorporating a copyrighted element into that new, creative work. Rather, this case is the digital equivalent of standing outside the neighborhood Redbox—or Blockbuster Video, for fans of history—and giving away copies of the movie for free.") (citation omitted). In addition, although not an automatic right, both parties have indicated they intend to seek an award of attorneys' fees and costs if they prevail, pursuant to 17 U.S.C. § 505, *see* D.E. 1 at p. 9(E), D.E. 11 at p. 10(C), which continue to compound as litigation progresses.

Weighed against these significant damages, the cost of imaging these hard drives is virtually non-existent since Doe *has already imaged them*. In response to RFP No. 3, Doe stated that one of the hard drives had already been imaged by defense counsel. *See* concurrently-filed Declaration of Lincoln Bandlow, at ¶ 10. In addition, after Plaintiff sent its first meet-and-confer letter on August 17, 2021 regarding this discovery dispute, in response, Doe's counsel confirmed that the second hard drive was also being imaged on August 20, 2021. *Id.* at ¶ 10. Clearly both parties have sufficient resources to perform this imaging. Regardless, Plaintiff will bear any further costs for imaging the hard drives.

Third, the relative access to this information highly favors production. "This factor focuses on 'information asymmetry,'" which can only be described as "extreme" here, since "Strike 3 has no way to independently access" the mirror images Doe created of his hard drives. *Cf. Strike 3*, 2021 WL 3128872 at *4. Here, the hard drives are easily accessible to Doe and have already been imaged by Doe. *See Lee v. Lee*, No. 19-8814, 2021 WL 430696, at *5 (C.D. Cal. Jan. 27, 2021) (finding defendants' accounting books "readily available and easy to produce" since the defendants had "already gathered" the materials) (granting motion to compel). Doe simply cannot dispute that there is no other source through which Plaintiff could obtain mirror images of his hard drives. *Cf. Monster*

10

*Energy Co.*, 2021 WL 1234723 at \*4 (finding production appropriate where party was "unable to obtain these documents from elsewhere").

Fourth, Doe's resources for this discovery are not an issue since, as noted above, Doe has *already* imaged the hard drives, and Plaintiff has agreed to cover the cost of having its expert conduct a forensic examination of the mirror images.

Fifth, the hard drives are critical to resolving Plaintiff's claim and Doe's defenses. *See supra* Sec. II.A.i; *Bordley*, 2019 WL 9098120 at \*1 n.1 (granting motion to compel).[4] Indeed, not only is the evidence central to proving the substantive point of this dispute (*i.e.*, proving Plaintiff's claim and/or exonerating Doe), but it is also procedurally important as well. Since Doe's experts have access to these hard drives—whether they chose to perform a meaningful analysis of them or only run "search terms" suggested by Doe[5]—the fact remains that Plaintiff's experts must be provided with them as well, both to rebut Doe's experts and to avoid rendering Doe's expert reports inadmissible hearsay.[6] Doe—the party with a vested interest in *not* permitting a full and fair review to uncover evidence of infringement—cannot cure this defect by limiting his own expert's review to "search term" results. *See infra* Sec. II.A.iv.

---

[4] *See*, *e.g.*, *Malibu Media, LLC v. Braun*, No. 14-12409, D.E. 24 (E.D. Mich. Jun. 20, 2014) ("Plaintiff is entitled to access the crucial evidence—defendant's hard drives and other electronic storage devices—before time lapses and older deleted files naturally are overwritten by newer files."); *Malibu Media, LLC v. Bemis*, No. 13-11415, 2013 WL 6550282, at \*4 (E.D. Mich. Dec. 13, 2013) ("The Court acknowledges that Defendant's computer and its hard drive are critical in the litigation of this matter . . . ."); *Alaujan*, 2009 WL 1292977 at \*1; *Tschirhart*, 241 F.R.D. at 465.

[5] *See US v. Sierra Pac. Indus.*, No. 09-2445, 2011 WL 2119078, at \*11 (E.D. Cal. May 26, 2011); *SEC v. Reyes*, No. 06-4435, 2007 WL 963422, at \*1 (N.D. Cal. Mar. 30, 2007).

[6] *See Nungaray v. Rowe*, No. 09-1768, 2011 WL 3862093, at \*4 (N.D. Cal. Aug. 30, 2011); *Colony Holdings, Inc. v. Texaco Ref. & Mktg., Inc.*, No. CV 00217, 2001 WL 1398403, at \*6 (C.D. Cal. Oct. 29, 2001).

11

Finally, the overall cost/benefit analysis weighs in favor of production. As discussed above, cost is not an issue here, and examination of the hard drives may prompt resolution of Plaintiff's claims and Doe's defenses. *See* Fed. R. Civ. P. 1. The only "risk" entailed in permitting a fulsome review—that Plaintiff's expert *might* uncover private information about Doe not germane to this copyright dispute—is accounted for by the protective and claw-back provisions set forth in Plaintiff's proposed ESI protocol.

Plaintiff has proposed a search protocol that it designed with its expert, *see* concurrently-filed Declaration of Patrick Paige, at ¶ 10, that would allow Plaintiff to inspect Doe's hard drives and cloud accounts for information relevant to the claims and defenses while protecting Doe's private information. That protocol limits the expert's analysis in several relevant categories:

A. Computer Device Authentication and Background Information: To secure Computer Device authentication and background information Plaintiff's expert will only search for: (1) the Computer Device's manufacturer name; (2) the Computer Device's serial number; (3) information about how and when the image was created.

B. Use of IP Address 47.144.166.78: Plaintiff's expert will search for the IP address 47.144.166.78 to establish a time period of Doe's use of this IP address.

C. Existence or Prior Existence of Plaintiff's Copyrighted Works: This search will only include a keyword search for: (1) the titles of all the works which corelate to any hashes listed on Exhibit A to Plaintiff's Complaint, and any variation thereof (Plaintiff agrees to provide the titles of the works to Doe); (2) the terms "Tushy," "Blacked," and "Vixen;" (3) Info Hashes corresponding to each work at issue in this case; and (4) Movie File Hashes corresponding to the infringed copy of each work at issue.

D. Use of BitTorrent and Peer-to-Peer File Sharing: Plaintiff's forensic expert would be permitted to search for: (1) the term "torrent"; (2) each file title listed in Plaintiff's "Additional Evidence;" (3) the Info Hashes corresponding to each file listed in Plaintiff's "Additional Evidence;" and (4) the presence or prior existence of a BitTorrent Client or Peer-to-Peer file sharing software (*i.e.*, a search for torrent clients, torrent trackers, torrent bookmarks, torrent files, torrent file fragments, and torrent related web history).

E. Computer Device Usage Data: The search for evidence of "Computer Device usage data" involves the examination of or

12

search for: (1) information about how and when the image was created; (2) the timeline of Computer Device usage; (3) devices that have been plugged into the Computer Device; (4) the installation, uninstallation, and use of anti-computer forensic software (software specifically designed to intentionally wipe or delete user activity on a Computer Device) including but not limited to BCWipe, CCleaner, Data Shredder, Evidence Eliminator, Window Washer, and any other wiping software programs installed or used on the Computer Device; (5) the contents within the unallocated space and recycling bin of the Computer Device; and (6) modifications on the Computer Device's system files. (7) all usernames available to log into the operating system on the Computer Device; (8) the Computer Device's operating system installation date; and (9) All dates the operating system conducted an operating system update during the period of infringement.

*See generally* Decl. Bandlow, Ex. 1 (¶ 10). Plaintiff's proposal also contains a claw back provision, *see* Fed. R. Evid. 502, which allows Doe to preserve privilege and other privacy objections regarding the material contained on the hard drives *without* Plaintiff even knowing the content of those materials. *See* Decl. Bandlow, Ex. 1 (¶¶ 12–13). In the face of this reasonable solution, Doe has not withdrawn his objections and indicated he will only agree to produce the hard drives subject to an unworkable search protocol.

### iii.   Doe's Objections are Without Merit

As a preliminary matter, many of Doe's objections to RFP No. 1 are moot. Doe's feigned ignorance that he does not understand the term "forensically sound" is undermined by the fact that Doe has *already* created a forensically sound image of the two hard drives at issue. For the same reason, Doe's objection that he cannot be compelled to "perform an operative act" to respond to discovery is similarly moot, since Doe has *already* performed that act.[7]

---

[7] This objection is also facially without merit, *see Biselli v. Cty. of Ventura*, No. 09-8694, 2012 WL 2061688, at *2 (C.D. Cal. June 4, 2012) (explaining that "preservation of relevant evidence is an affirmative duty"), as is Doe's objection that the Federal Rules do not require him to "bear the cost" of imaging and production. *See Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, No. 17-1388, 2019 WL 121195, at *2 (C.D. Cal. Jan. 7, 2019) (citation omitted) ("The rules of discovery presume that 'the responding party must bear the expense of complying with discovery requests.'").

13

1   As to Doe's other objections, it is well-settled that *pro forma* objections

2   based on burden, harassment, or relevance[8]—unaccompanied by explanations,

3   argument, or supporting evidentiary declarations—are improper. *See A. Farber &*

4   *Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006); *Jang v. Sagicor*

5   *Life Ins. Co.*, No. 17-1563, 2019 WL 988690, at *3 (C.D. Cal. Jan. 25, 2019).

6   "Boilerplate, generalized objections are inadequate and tantamount to not making

7   any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584,

8   587 (C.D. Cal. 1999).

9   Doe's attempts to invoke California's Constitutional Right to Privacy, Cal.

10  Const. Art 1, ¶1,[9] and the attorney-client and "spousal" privileges,[10] are similarly

11  deficient: "boilerplate objections . . . are insufficient to assert a privilege."

12  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d

13  1142, 1149 (9th Cir. 2005). "Rule 26(b)(5)(A) requires parties withholding

14  otherwise discoverable information on the ground of privilege must expressly

15  claim the privilege and 'describe the nature of the documents, communications, or

16  tangible things not produced or disclosed . . . in a manner that . . . will enable

17  other parties to assess the claim.'" *Cook v. San Bernardino Cty. Sheriffs Deputies*,

18  No. 18-1436, 2019 WL 8645856, at *3 (C.D. Cal. Dec. 12, 2019). "Although there

19  is no requirement that the descriptions of the documents withheld be produced in a

20  particular format, a privilege log is the most common format." *Johnson v. Moss*

21  *Bros. Auto Grp.*, No. 19-2456, 2020 WL 6565315, at *6 (C.D. Cal. Sept. 14,

22

23  _____

[8] Doe's unexplained and duplicative objections that RFP No. 1 is "irrelevant" and

24  "irrelevant to the dispute at hand" are both refuted in detail in Sec. II.A.ii, *supra*.

[9] Doe's attempt to rely on the California constitution to provide support for his

25  privacy argument is also misplaced, since state constitutional protections do not

apply in federal courts hearing federal questions. *See Virginia v. Moore*, 553 U.S.

26  164, 171 (2008); *California v. Greenwood*, 486 U.S. 35, 43 (1988).

[10] Plaintiff assumes Doe intended to invoke the "marital communications"

27  privilege, since the "adverse spousal testimony" privilege is clearly inapplicable

28  here.

14

*Joint Stipulation Under L.R. 37-2*

2020) (citation omitted). "Failure to provide sufficient information may constitute a waiver of the privilege." *Safety Syringes, Inc. v. Plastef Investissements*, No. 07-2307, 2009 WL 10672569, at *2 (C.D. Cal. July 2, 2009).

Doe has provided no privilege log (or otherwise described the withheld documents), and the parties' conferral attempts have resulted in little-to-no additional explanation to support Doe's objections. Doe's letter dated August 18, 2021 rejected Plaintiff's proposed ESI protocol, arguing that it allowed a "wholesale inspection" of Doe's communications and family photos. Decl. Bandlow, at ¶ 9. But that is inaccurate. As discussed above, Plaintiff's ESI protocol limits examination to five specific categories of data—none of which include Doe's communications with counsel or family photos. *See id.* at Ex. 1.

Doe's primary objection is that that the hard drives *might* contain information that he considers private. However, the mere assertion that unidentified documents might be confidential or private is not a valid basis to withhold relevant discovery. Indeed, there is no absolute privilege for "confidential" information and "orders forbidding any disclosure of trade secrets or confidential information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 n.24 (1979). Moreover, "even where 'objections are raised regarding confidential, private or personal information, . . . confidential information may be required to be disclosed after' weighing 'the right to discover relevant information . . . against the right to privacy[.]'" *Burke v. Basil*, No. 20-635, 2021 WL 400516, at *4 (C.D. Cal. Jan. 29, 2021). "[I]f the balance of interests weighs in favor of production, any privacy concerns can be addressed with a protective order." *Moser v. Health Ins. Innovations, Inc.*, No. 17-1127, 2019 WL 2271804, at *4 (S.D. Cal. May 28, 2019) (citation omitted). Plaintiff respectfully submits that the provisions of its

proposed ESI protocol "strike[] the appropriate balance between the need for the [discovery] and [Defendant]'s privacy interests." *See Wiggins v. Penske Logistics LLC*, No. 19-2260, 2021 WL 2791610, at *4 (C.D. Cal. May 11, 2021). Accordingly, Doe's privacy objections should not prevent the production of his hard drives for inspection by Plaintiff, subject to Plaintiff's ESI protocol.

### iv.    Doe's "Search Term" Proposal Is Not Appropriate for This Case

Doe's "search term" proposal would inappropriately burden discovery in this matter, so much so that imposing Doe's restrictions will render any information produced to be of dubious evidentiary value. Doe's proposal would prevent Plaintiff from obtaining any data/metadata that is in an encrypted, encoded, or compressed state on the hard drive or cloud account, including the "info hash" values listed in Exhibit A of the Complaint. Decl. Paige at ¶¶ 16–18. More importantly, Doe's proposal is designed to deny Plaintiff—and the Court—from having any confidence in the completeness and veracity of search results, since Plaintiff's expert would be denied access to review the data, metadata, and system metadata/usage data necessary to confirm (A) whether the hard drive or cloud account belongs to Doe, (B) whether the hard drive or cloud account was used by Doe during the relevant time period, (C) the date and time the hard drive or cloud account was mirror-imaged/preserved, and (D) that the hard drive or cloud account being reviewed has not been altered (or, if it has been altered, how it was altered)[11] prior to the review. *See id.* at ¶¶ 13–14; *see also Aguilar v.*

---

[11] While digital evidence is easily altered, deleted, and overwritten with continued use of a computer device, Decl. Paige at ¶ 17, forensic review that encompasses usage data/system metadata is particularly important in matters involving the piracy of adult works, since defendants in these matters often have a strong personal motivation to alter evidence to avoid embarrassment, separate and apart from concerns of avoiding liability. *See, e.g., Malibu Media, LLC v. Doe*, No. 14-10155, D.E. 93 (S.D.N.Y. Dec. 9, 2015); *Malibu Media, LLC v. Tashiro*, No. 13-205, 2015 WL 2371597 (S.D. Ind. May 18, 2015), *report and rec. adopted*, 2015 WL 3649359 (S.D. Ind. June 11, 2015); *Malibu Media, LLC v. John Does 1, 6,*

16

*Immigr. & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 354 (S.D.N.Y. 2008). Indeed, this is an issue of particular importance in this matter, given that Doe has refused to represent or warrant that the hard drives he has identified belong to him and/or are the only relevant hard drives responsive to these discovery requests. Decl. Bandlow, at ¶ 12.  And even if Doe's proposal could somehow overcome these fundamental deficiencies, the fact remains that it is also unduly burdensome and practically unworkable, since it would require the parties to guess at (and agree on) literally thousands of possible combinations of search terms for each item, rather than merely allowing each parties' expert to review the imaged hard drives for relevant, non-privileged evidence.  *See*, *e.g.*, Decl. Paige at ¶ 20–21 (explaining different file naming conventions and the impracticality of designing a protocol around those permutations).

Doe erroneously believes that if a "search term" review of his hard drives yields no results, then the parties' experts can opine that the Doe did not infringe Plaintiff's copyrights. But the Court should not be fooled. Such a limited search would only have value if the parties' experts can *also* confirm that all hard drives used by Doe have been produced; that all relevant data, metadata, and system metadata/usage data is encompassed in the search; and that no settings, events, or occurrences on the computer would affect the outcome of that search.  But Doe's search term protocol does not—and cannot—access all relevant data and metadata.  Nor does Doe's protocol permit the parties' experts to review information necessary to confirm the veracity and completeness of the search.  In other words, Doe's self-serving proposal would only result in *both* parties' experts providing incomplete expert reports. The results of such a flawed search protocol—unable to uncover and confirm the critical "who," "what," "how," and

*13, 14*, 950 F. Supp. 2d 779 (E.D. Pa. 2013); *Columbia Pictures, Inc. v. Bunnell*, No. 06-1093, 2007 WL 4877701, at *6 (C.D. Cal. Dec. 13, 2007).

*Joint Stipulation Under L.R. 37-2*

Case No. 2:20-cv-08646-TJH-SP

"when" of the hard drive's use (or that these hard drives are the only ones used, that they actually belong to Doe and/or that they have not been altered)—would be neither reliable nor helpful, and would cause actual and substantial prejudice to Plaintiff. *See Aguilar v. Werner Enterprises Inc.*, No. 11-1385, 2014 WL 12521332, at *4 (D. Ariz. Feb. 28, 2014), *aff'd*, 671 Fed. Appx. 503 (9th Cir. 2016).

Finally, Doe's proposed "search term" review overlooks a fundamental aspect of this litigation: this case involves movies, and not words. Even if a "search term" examination could return a responsive video file, a protocol limited to "search terms" would preclude Plaintiff's expert from opening and viewing each video file to determine whether it is, in fact, Plaintiff's work. Decl. Paige at ¶ 19.  This would tie the expert's hands and prevent him from reviewing those files, including those files stored in "unallocated space," which must be forensically extracted to be reviewed.  *See id.*

The fact is that "the world of electronic discovery has moved well beyond search terms. While search terms have their place, they may not be suited to all productions." *Hastings v. Ford Motor Co.*, No. 19-2217, 2021 WL 1238870, at *3 (S.D. Cal. Apr. 2, 2021). And while creating forensic copies of hard drives may not be appropriate in every civil suit, it is clearly proper here. *See The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 141 cmt. 8(c) (2018) ("[C]reating a forensic copy clearly is appropriate in some circumstances, particularly when there is unique ESI that can only be found—or an issue that can only be resolved—through a forensic examination of the system, including logs, registry keys, and tables[.]"); *see also* Fed. R. Civ. P. 34 advisory committee's note (stating that Rule 34(a)(1) was "not meant to routine right of direct access to a party's electronic information system, although such access might be justified in

18

some circumstances").  Indeed, it makes no sense for Doe to oppose this
discovery, since it is likely the "only evidence that could exonerate" him of
engaging in copyright infringement. *Howell*, 2008 WL 4080008 at *2.

19

**B.      Doe's Contentions and Points of Authority**

This case is about 54 movies that Strike 3 *alledges* Doe infringes, not about Strike 3 inspecting thousands of unrelated files on Doe's computers.  Strike 3 should be allowed to view personal family photos of Doe's child, email correspondence with his counsel, or inspect financial records on Does hard drive.

Strike 3's recent request to image and inspect the personal Hard Drive of Doe's personal computer is a disfavored discovery device.  See *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.,* (SD CAL 2014) 2014 WL 12642170, pg.   3 stating " *courts are generally cautious about granting a request for a forensic examination of an adversary's computer*."

Doe's counsel has offered to process a list of search strings that Strike 3 designates, like "Tushy", or "Blacked", and provide those files to Strike 3.

When Strike 3 requests an "imaged copy of a personal hard drive", they are simply making this request:

> "Produce all documents stored on your computer since you have acquired it and for all topics both unrelated and related to this lawsuit, furthermore you will waived all privileges and your privacy".

If Strike 3 request was reworded as an inspection of a party's office so it could search for a document, the Court would certainly deem that request to be overbroad and intrusive.  But, instead of asking to search an entire office, Strike 3 requests a search of an entire hard drive and the cloud. This too is overbroad and intrusive. This too should not be allowed. Doe's offer to process a list of search strings is workable and should be an accepted alternative.

i.      <u>Strike 3 has failed to show a causal link between the infringements and John Doe as a subscriber and further discovery should not be conducted under *Cobbler*.</u>

20

Doe has testified, via his responsive interrogatories, that he provided "open wifi" to all of his neighbors. This scenario is factually identical to the case dismissed at the pleading stage in *Cobbler Nevada vs. Gonzales (*2018) 901 F.3d 1142.  In *Cobbler* the Subscriber had "open wifi' accessible to people in his home.  The Court dismissed under Twombly for the movie owner's failure to plead sufficient facts for claim of relief.

Here Strike 3 has not alleged any additional facts in their motion that would connect Doe to the alleged infringements.  Rather their request is not tailored in view of information they have acquired "in addition to" responses from written discovery, rather their hard drive request is simply a wholesale demand <u>despite</u> the fact that they have failed to state a claim under *Cobbler.*

This Court should not allow wholesale, intrusive, and expensive, discovery when Strike 3 has failed to plead and/or declare facts that would put them outside the scope of Cobbler.

ii.   <u>Strike 3's Request to image and analyze the Hard Drive is</u>
<u>Disproportionate under Rule 26</u>

Doe's response to Strike 3's request to make a copy of Doe's personal hard drive is costly and burdensome under Fed Rules Civ Proc 26(b)(2)( B) as Doe will have to review every file on the hard drive (which has data since 2015), determine if the file contains attorney-client information, communications under the spousal privilege, personal family photos (which it does), and private financial information. Then Doe will have to determine a way to redact that information on the hard drive without potentially altering the contents of the drive itself.

Strike 3's request is disproportionate under Fed Rules Civ Proc 26(b)(2)(C)(i) in that the Strike 3 can obtain the same information by providing "search strings", a methodology that has been approved by almost every court in civil actions involving ESI and is part of most district model orders.

21

Instead the Court has the power under Fed Rules Civ Pro 26(c)(1)(C), this Court may proscribe a discovery method that is crafted to balance the information that Strike 3 wants, namely evidence of infringement, against Doe's right to keep personal information private.  The proper balance is the use of 'search strings'

iii.    Strike 3's Request does not comport with Rule 26 or the Sedona Principles.

The Sedona Principles is guidance on Rule 26. Regarding Rule 26(b)(1). See *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.* (D. Kan. 2018) 17-md-2785-DDC-TJJ, March 15, 2018, fn4.

Rule 26(b)(1) stresses proportionality in discovery. The factors are:
• importance of the issues at stake in the action;
• amount in controversy;
• parties' relative access to relevant information;
• resources of the parties; and
• importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The issues in this case are relatively not very important.  Strike 3 produces movies and has sued thousands of alleged "downloaders", but routinely settles for less than $ 10,000.00.  This settlement amount is set at a level which discourages a party from hiring an attorney and defending a spurious claim.

The amount in controversy is not very high. While Strike 3 claims statutory damages, the reality is that they have accepted offers of judgment for $3,500.00. This is much less than the $ 10,000.00  "small claims" jurisdictional limit in state court.

Doe has access to the hard drive contents.  His counsel has utilized a tool to respond to written discovery.  But developing a privilege log by reviewing thousands of documents on hard drive: financial documents, bank statements,

22

family photos, communications between spouse, and attorney-client communications. Every person has the personal experience of "cleaning up" their hard drive to determine what should deleted.

Strike 3 is a pornography company that is partially funded by their litigation efforts[12].  Strike 3 makes at least $ 3.5M USD a year in gross revenue from settlements (>1,000 cases/yr *$3,500.00 settlement).  See *Strike 3 Holdings vs. John Doe* (ECF 23 9/21/2021) 20-cv-00975-TJH-SP "accepting a $ 3,500.00 offer of judgment".  Doe, on the other hand, has a salary that is less than six figures.

Doe's proposed protocol of using "search strings" is the default ESI protocol in most ESI intensive district courts.

- ND CAL - See https://www.cand.uscourts.gov/forms/e-discovery-esi-guidelines/
- WDWA – See https://www.wawd.uscourts.gov/sites/wawd/files/61412ModeleDiscoveryProtocol.pdf
- EDTX – See https://www.txed.uscourts.gov/sites/default/files/forms/E-Discovery_Patent_Order.pdf
- SD FL – See https://www.flsd.uscourts.gov/sites/flsd/files/forms/ESI-Checklist.Rule-16.1..pdf

In a similar case, *Hardy v. UPS Ground Freight, Inc.*, Civil Action No. 3:17-cv-30162-MGM, 2019 WL 3290346, at *2 (D. Mass. July 22, 2019), a request was made for the forensic inspection of a cell phone.  When analyzing the proportionality requirements under Rule 26, the Court found that modern cell

---

[12] No other movie studio acts uses the court system, to the extent of Strike 3. In 2021, Strike 3 is the only movie studio filing hundreds of cases. see Sag, Matthew and Haskell, Jake, Defense Against the Dark Arts of Copyright Trolling (January 1, 2018). 103 Iowa Law Review 571 (2018), Available at SSRN: https://ssrn.com/abstract=2933200

phones (like laptops), "… hold for many Americans 'the privacies of life…'"    In this case, the *Hardy* court illuminated many requirements for the moving party to forensically inspect a private personal device.   Some of these requirements for the moving party from *Hardy* are:

- [Moving Party] has not proposed a protocol that would limit its access to private or privileged contents of Computer [Plaintiff's cell phone]
- [Moving Party] has not established that Doe [Plaintiff] has deleted or lost relevant information from his Computer  [cellphone]
- [Moving Party] has failed to show that a far less intrusive option would not yield the information it seeks

Here Strike 3, like in *Hardy*, fails on all three points.    Strike 3 has not proposed an ESI protocol.  Second Strike 3 has established that relevant information exists on the hard drive.  Lastly, search strings is a by far less intrusive option.

iv.    Strike 3 refuses to acknowledge a workable ESI Protocol already ordered in the Western District of Washington ("Seattle Case")

One reason why discovery is extremely expensive is that parties want to relitigate issues that have already been decided by other judges.  Here Strike 3 was given a clear roadmap on what could be discovered on Doe's drive within the costs and constraints of eDiscovery.

Strike 3 has proffered the declaration of Patrick Paige as the basis for their motion.  But Judge Zilly considered the same motion by Strike 3 in the Seattle Case also supported by a declaration from Patrick Paige and rejected it.  Furthermore, Patrrick Paige has not demonstrated that his declaration is supported by credible evidence. Mr. Paige statements are opinion testimony unsupported by foundational documents.    The admissibility of opinion testimony without a documented methodolgy is disallowed under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., (1993) 509 U.S. 579

Doe has offered to Strike 3 the right to select their own "search strings" in their discovery process, even beyond the hash values allowed by Judge Zilly in the Seattle Case.  Strike 3 is unwilling to try this process.

v.   <u>DOE has already responded to written discovery</u>

Doe has already responded to written discovery and has inspected the hard drive with forensic tools in response to Strike 3's written discovery requests. Unsurprisingly, there are no torrents on the hard drive because Doe does not use a torrent browser.  As this case is about "torrent downloading", the case should have ended in Florida when Doe told Strike 3 that he did not download the movies at issue.

vi.   <u>Cases not referencing the proportionality requirements under Rule 26 should be given very little weight.</u>

Strike 3's motion is a treatise of citations. But ESI discovery fundamentally changed when  Rule 26 was rewritten in 2016 with proportionality as a key element. As a result almost every discovery decision before 2016 which involves the imaging and production of hard drives should either be carefully reviewed or not considered. See *Helena Agri-Enterprises, LLC v. Great Lakes Grain,* (6th Cir. 2021)  LLC, 988 F.3d 260, 273.

## III.   REQUEST FOR PRODUCTION NO. 15

Plaintiff's RFP No. 15 requests: *A complete copy of all of the FILES contained within any CLOUD BASED STORAGE SYSTEM to which YOU or anyone at YOUR ADDRESS have USED between October 2019 through present day.*[13]

---

[13] The definitions of "YOU," "YOUR," "ADDRESS" and "USED" are discussed in Sec. ii, n.2.  *Supra.*  The term "FILES" is defined as "the complete file, folder,

25

Doe's objection to RFP No. 15 states: *Further supplying an entire copy of the "Cloud based system", whether allows to Plaintiff access to documents that are: irrelevant, protected by California's Constitutional Right to Privacy Cal Const Art 1, ¶1; protected by the Attorney Client privilege, protected by the Spousal privilege, and not proportional under Rule 26.*

Doe's response to RFP No. 15 states: *Defendant will search the hard drive for specific documents using "search terms" or "search strings" and return requested documents.*

### A.   Plaintiff's Contentions and Points of Authority

Doe's objection and response to Plaintiff's request for Doe's CLOUD BASED STORAGE SYSTEM ("cloud accounts") is merely a repetition of his objection and response to RFP No. 1 concerning his hard drives and, accordingly, in the interest of conserving judicial resources, Plaintiff incorporates by reference its discussion of the merits of these objections and responses set forth above. For all the same reasons, Doe's cloud accounts—which are akin to hard drives in that they store data remotely rather than locally—are relevant and production of them is proportional to the needs of this case. *See Ricupero*, 2015 WL 4273463 at *9 (compelling production of information on cloud accounts because "cloud storage is 'basic common technology' which allows users to store and access data much like a computer hard drive.").

Files stored on Defendant's cloud systems would likely provide insight into whether the alleged copyright infringement occurred.

binder, or other filing system, and all documents contained therein as of the date of production, and all documents not physically in the file, folder, binder, or other filing system that are normally kept within the file, folder, binder, or other filing system in the normal course of business." The term "CLOUD BASED STORAGE SYSTEM" is defined as "a model of data storage where the digital data is stored in logical pools, the physical storage spans multiple servers (and possibly locations), and the physical environment is typically owned and managed by a hosting company. This includes, but is not limited to, third party cloud storage systems such as Amazon Cloud Drive, Apple iCloud, DropBox, Google Drive, MediaFire, Mega, Microsoft SkyDrive, OneDrive, SpiderOak, and Ubuntu One."

26

*Joint Stipulation Under L.R. 37-2*

> Consequently, copies of Defendant's cloud storage files are highly relevant to the claims made in this case. Additionally, Plaintiff's request is proportional to the needs of the case. As above, the information contained in Defendant's cloud storage systems are crucial to the needs of the case and Plaintiff cannot obtain them without discovery. Further, the cost to retrieve such files is negligible because the files are already in Defendant's possession.  He can access them with a click of a button.

*Bordley*, 2019 WL 9098120 at *1 n.1; *see also WeRide Corp. v. Kun Huang*, No. 18-7233, 2019 WL 5722620, at *10 (N.D. Cal. Nov. 5, 2019) (authorizing production of party's cloud accounts). Accordingly, entry of an order authorizing production of Doe's cloud accounts, subject to the protective provisions contained in Plaintiff's proposed ESI protocol, is also appropriate.

### B.      Doe's Contentions and Points of Authority

Doe incorporates by reference the arguments of RFP #1.  Strike 3 additionally fails to allege how an external "cloud storage account" would directly   store information from a web browser installed on the computer.   While this is possible, the same information would also be located on the computer and thus inspection of this data source would be duplicative.

*WeRide Corp. v. Kun Huang*,  as cited above involved a trade secrets case involving the theft of autonomous driving technology.  Bordley involved a situation where the defendant already agreed to produce the hard drives.   Ricupero was a "preproportionality" case and not applicable under the current rules.

27

# IV.    CONCLUSION

## A.    Plaintiff's Conclusion

Doe's hard drives and cloud accounts are the instrumentalities of his infringement and are at the very heart of this case. Doe does not, and cannot, seriously contend they are not discoverable. Instead, Doe offers only vague and unsubstantiated objections that can be easily accounted for with a protective order, and vainly hopes that Plaintiff—and the Court—can be fobbed off with an outdated and deficient search protocol using "search terms" and "search strings." But this case is about movies, not words. Doe's suggestion is only attractive to Doe because it is designed to *not* uncover the evidence of his infringement.

Accordingly, Strike 3 respectfully requests the Court compel John Doe to produce mirror images of his hard drives and cloud accounts and enter Strike 3's proposed ESI protocol/protective order, *see* Decl. Bandlow at Ex. 1, which will allow Plaintiff's expert to meaningfully inspect the hard drives and cloud accounts while safeguarding Doe's privacy and privilege concerns.

## B.    Doe's Conclusion

Strike 3 merely repeats a discovery request that they already lost in the Western District of Washington, and for good reason.  A forensic hard drive inspection is intrusive, invasive, and reveals privileged and confidential information.   Strike 3 has nothing to connect Doe to the infringements but an IP address that was used by dozens of people. Nowhere does Strike 3 articulate how they will "…safeguard Doe's privacy and privilege concerns…"

Doe has provided an acceptable alternative that balances the interests of both parties.

Date:   10/21/21

_____
Lincoln D. Bandlow, Esq.

Attorney for Plaintiff
Strike 3 Holdings, LLC

Date: 10/19/21

/s/ J Curtis Edmondson
_____
J. Curtis Edmondson

Attorney for Defendant
John Doe

Date:   10/21/21

 /s/ Douglas J. Rosner
_____
Douglas J. Rosner, Esq.

Attorney for Defendant
John Doe

29

# United States District Court
# Central District of California
# Western Division

STRIKE 3 HOLDINGS, LLC.,

      Plaintiff,

v.

JOHN DOE SUBSCRIBER ASSIGNED
IP ADDRESS 47.144.166.78,

      Defendants.

CV 20-8646-TJH(SPx)

Order Setting
Final Pre-trial Conference
and
Referring Discovery

    It is Ordered that all discovery matters which become at issue are referred to *Magistrate Judge Sheri Pym* for her/his consideration. Please contact the courtroom deputy clerk to the Magistrate Judge regarding these matters.

    It is Ordered, pursuant to Rule 16 of the Federal Rules of Civil Procedures and Local Rule 16, that the Final Pre-Trial Conference is placed on the Court's calendar for ***AUGUST 9, 2021 at 10:00 a.m.*** in Courtroom No. 9B in the U. S. Courthouse on First Street.

Unless excused for good cause, each party appearing in this action shall be represented by the attorney who is to have charge of conducting the trial.

It is further Ordered that any application or stipulation to continue the Final Pre-Trial Conference shall be lodged with the court no later than one week prior to the Conference date, and shall state the reason for seeking the continuance.

The Court does not issue a scheduling order or set a status conference regarding the management of cases. Counsel are to come to an agreement regarding these dates to comply with FRCvP26 and Local Rule 16 in order to prepare for the Final Pre-Trial Conference. If discovery has not been completed by the time of the Final Pre-Trial Conference, the COURT will set dates for discovery cutoff, the filing of any anticipated pre-trial motions and for trial which could be a date four to six months from the day of the Final Pre-Trial Conference.

Date: MAY 10, 2021

_Terry J. Hatter, Jr.
United States District Judge

Note to counsel: Please review the attached "Memorandum"

# M E M O R A N D U M

**TO:**        **COUNSEL OF RECORD**

**FROM:**     **Yolanda Skipper, Courtroom Deputy Clerk to the Hon. Judge Hatter (www.cacd.uscourts.gov)**

**RE:**        **Procedural Rules for Judge Hatter's cases**

## MOTIONS:

All civil motions shall stand submitted, without hearing oral arguments, as of the calendared date of the motion. If Judge Hatter desires to hear oral arguments, the motion will be set by written notification to counsel for a date other than the calendared date of the motion.

Please notice the motion for a Monday, <u>excluding legal holidays</u>, and comply with the Local Rules as to service and filing of the motion. Where you will indicate the time of the hearing, please insert "Taken Under Submission". No one needs to appear unless ordered by the Court.

When a decision has been made, copies of the order and/or judgment will be sent to all counsel of record via the CM/ECF system. PLEASE REFRAIN from calling the court clerk regarding the status of the motion. See Local Rule 83-9.2. expect ruling to come out no later than 120 days from the hearing date.

## DEPOSITIONS:

Please do not lodge depositions in conjunction with a motion. If Judge Hatter finds it necessary to review a deposition, counsel will be contacted.

## EX PARTE APPLICATIONS:

Please comply with the Local Rules except as to the date and time for a hearing. Judge Hatter will determine whether a hearing is necessary after he has reviewed the application. If there is to be a hearing, counsel will be contacted as to date and time.

When opposing counsel has been notified of an ex-parte application and would like to submit a written objection, please contact the court clerk immediately and counsel will be given, at least, a day to file it.

**TELEPHONIC INQUIRIES regarding the status of a stipulation may not be returned.**

## DISCOVERY MATTERS/MOTIONS:

All discovery matters which become at issue are referred to the Magistrate Judge assigned to the case for his or her determination. The initials in parentheses in the case number indicates the name for the magistrate judge. Please contact the court clerk for the magistrate judge regarding these matters.

**SCHEDULING CONFERENCE / PRE-TRIAL CONFERENCE:**
Judge Hatter does NOT set a scheduling conference. When the matter becomes at issue or the majority of the pleadings have been filed, the Final Pre-trial Conference will be set. The Joint Proposed Pretrial Conference Order is to be lodged with the Court no later than **SEVEN** days prior to the Final Pre-trial Conference hearing. Failure to comply with the Court's Order may result in the imposition of **sanctions**.

**SETTLEMENT :**
Please comply with Local Rule 16-15.7 and be prepared to file a Notice of Settlement with an estimated time in which you will file the proper Stipulation and Order of dismissal.

**NAMES OF REPORTERS:**
The name of the reporter for a hearing may be obtained from the Minutes of the hearing. It can also be obtained from the CM/ECF or PACER on the Central District of California's website (www.cacd.uscourts.gov). Court reporters contact information are also available on the Court's website.

**COURTESY COPIES:**
Mandatory courtesy copies of ALL electronic filed documents will be delivered, with the notice of electronic filing attached, to the Customer Service Window, 4th Floor at 350 W. 1st Street, Attention: Yolanda Skipper for Judge Hatter. Additionally, for any filings requiring a proposed order, an electronic word processing version must be emailed to Judge Hatter's chambers email inbox at tjh_chambers@cacd.uscourts.gov. The subject line should appropriately indicate that nature of the document (example: CV 00-1234-TJH-PROPOSED ORDER- STIP TO CONTINUE).

**TRIALS:**

**Exhibits and Witness Lists:**

On the first day of trial, arrive at courtroom no later than 9:45 a.m. and please bring with you the following:

   1. All exhibits, already marked (witness copy); Exhibit Tags may be obtained from the Civil Intake Division of the Clerk's Office,   Affix them to the lower right-hand corner of the exhibit.
   2. Bench copy of all tagged exhibits.  Place them in a binder with tabs corresponding to the exhibit numbers; If a blowup is an enlargement of an existing exhibit, it shall be designated with the number of the original exhibit followed by an appropriate alphabetical design.
   3. Copies of depositions that are to be used for any purpose (original or a copy for the witness and a copy for the judge;
   4. Three clean copies of your witness list for Court use **(no headers of filing marks)**;
   5. Three clean copies of your exhibit list (to include columns identifying the exhibit number, description of the exhibit, date identified and date admitted/received) for Court use;

Counsel should email word processing versions of the witness, exhibit lists and proposed verdict form to the courtroom deputy clerk no later than a day before the trial at **tjh_chambers@cacd.uscourts.gov** and appropriately indicated the nature of the document in the subject line (example: CV 00-1234-TJH- Defendant's Exhibit List).

## DEPOSITIONS:

If they are to be used during a trial, LODGE them 7 days prior to the trial. If a deposition is to be used in lieu of live testimony, please indicate the designated portions by any means other than color-coded. Judge Hatter is "color ignorant". You may designate the portions by listing them on a separate sheet.

All proposed Voir Dire questions should be filed 5 days prior to the trial.

**JURY INSTRUCTIONS -** PLEASE comply with the ORDER regarding instructions issued after a trial date has been set (usually at the Final Pretrial Conference).

**TRIAL HOURS:**   Tuesdays through Fridays
Begin at 9:00 a.m. (except for the 1st day - at 10:00 a.m.)
Lunch recess is normally 12:00 noon to 1:30 p.m.
Adjourn between 5:00 p.m. and 6:00 p.m.
There will be a mid-morning and mid-afternoon recess.

Do not approach the clerk or witness box without specific permission. Please return to the lectern when the purpose of the approach is finished. Please **RISE** when addressing the Court. Counsel shall not, by facial expression, nodding, or other conduct, exhibit any opinions, adverse or favorable, concerning any testimony which is being given by a witness. Counsel shall admonish their own clients and witnesses similarly to avoid such conduct.

## IMPANELING OF JURY / CONDUCT OF COUNSEL:

On the first day of trial, Judge Hatter will instruct counsel as to voir dire procedures, expected conduct of counsel during trial, and other relevant matters. Always **stand** and approach the lectern when addressing the Court.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

STRIKE 3 HOLDINGS, LLC,

              Plaintiff,

vs.

JOHN DOE subscriber assigned IP address 47.144.166.78,

              Defendant.

Case No.: 2:20-cv-08646-TJH-SPx

**ORDER TO CONTINUE THE FINAL PRETRIAL CONFERENCE CURRENTLY SET FOR AUGUST 9, 2021 AT 10:00 AM  [19]**

**THIS MATTER** was opened to the Court by Lincoln D. Bandlow, Esq., on behalf of Plaintiff Strike 3 Holdings, LLC ("Plaintiff"), and by Joseph Curtis Edmondson, Esq., on behalf of Defendant John Doe subscriber assigned IP address 47.144.166.78 ("Doe"), as a joint stipulation for the entry of an order continuing the Final Pretrial Conference currently set for August 9, 2021 at 10:00 AM; the Court having considered the parties' written submissions in connection with the request pursuant to Federal Rule of Civil Procedure 78, and for good cause shown:

**IT IS** on this 4TH day of August, 2021,

1.    **ORDERED** that the Final Pretrial Conference currently set for August 9, 2021 at 10:00 AM be continued to January 24, 2022 at 10:00 a.m.

HON. TERRY J. HATTER, JR.
UNITED STATES DISTRICT JUDGE

1